IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASON LAMONT JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 4:16-cv-00473-GBC<br><br>(MAGISTRATE JUDGE COHN)<br><br>OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL |

**OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for decision. Plaintiff Jason Lamont Johnson ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

**I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.     Procedural History**

In February 2013, Plaintiff protectively applied for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). (Tr. 238-39, 253-58). Plaintiff alleged disability as of October 27, 2011, due to a back injury, high blood pressure, and depression. (Tr. 238, 291). Following a hearing in July 2014 (Tr. 35-71), an administrative law judge ("ALJ"), concluded Plaintiff was not disabled within the meaning of the Act in a decision dated December 16, 2014 (Tr. 19-28). The Appeals Council declined review of the ALJ's decision (Tr. 1-6). This appeal followed.

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges two errors: (1) the ALJ committed reversible error by failing to properly evaluate the medical opinion evidence of record; and (2) the ALJ committed reversible legal error by failing to discuss uncontroverted and / or significantly probative evidence that conflicted with her findings. (Pl. Br. at 6, Doc. 17).

A.  **ALJ Evaluation of Medical Opinions**

Plaintiff alleges the ALJ erred by failing to evaluate every medical opinion in the record. (Pl. Br. at 6). In the decision, the ALJ reviewed Plaintiff's medical record.

> As addressed in the prior decision, the claimant has a history of degenerative disc disease of the lumbar spine, status post discectomy in 1991 and fusion in 2008; as well as a history of depression, cocaine dependence and marijuana abuse. The records of July 15, 2011, also reflect a diagnosis of hypertension "in good control," and "bursitis or rotator cuff tear on the left shoulder." The claimant testified that since October 27, 2011, (the alleged onset date in this instant application) the claimant continues to suffer from pain; but has ceased his use of cocaine and marijuana. The claimant testified that he is unable to work due to pain …
>
> On May 9, 2013, the claimant underwent a physical examination with Dr. Jerry D. First at the request of [the] State agency. By the date of his examination with Dr. First, the claimant had still not had his left shoulder evaluated. The claimant also complained of continued pain in his back (at the same intensity) since 2007. However, the claimant was notably "not currently taking any pain medications" with "no plans to do anything further, for his back." Despite some observed limitation in his range of motion (particularly at his back), the claimant was able to walk down the 70-foot hallway without any difficulty or need of assistance. His gait was "normal, safe, and stable," and there was "no cyanosis, clubbing, or edema … joint deformity, redness, or swelling" in any of his extremities.
>
> On May 29, 2013, the claimant's family physician called the claimant's back pain "stable" and noted that his "symptoms are relieved by over the counter medication." The claimant's blood pressure was also notably "controlled" with the use of blood pressure medication.
>
> Despite good control of his back pain with over the counter meds in May of 2013; in September of 2013, the claimant reported back pain which radiated to his legs and he was prescribed Tramadol. However, by October of 2013, the claimant had "been taking more tramadol than instructed" and his physician ceased prescribing same …
>
> On June 27, 2014, the claimant "denied any new injuries or changes in his back pain." Despite this lack of change the claimant's physician opined that the "patient is only able to sit for 10 minutes at a time. He has to change his position frequently due to pain." Noting no change in his condition (since 2007) I give his physician's opinion regarding the claimant's inability to sit for 10 minutes at a time and frequent need to change position, little weight. As noted previously, by May 20, 2013, the claimant's back pain was "relieved by over the counter medication."

4

> A State agency medical consultant prepared a physical medical source statement regarding the claimant dated June 20, 2013. The consultant found that the claimant could perform work activity at the medium exertional level. This opinion was shared upon reconsideration in a report dated November 13, 2013. However, given the claimant's history of back surgery, I find that the claimant is more limited than opined by the State agency consultants, and therefore, give those opinions limited weight.

(Tr. 25-26). Thus, the ALJ preformed a thorough review of Plaintiff's most recent medical record, pertaining to the time of his alleged onset of disability date of October 27, 2011, through the date of the ALJ's decision, December 16, 2014.

### 1. Gary Lee, M.D.

Plaintiff states the ALJ erred by failing to consider all the medical opinion of Dr. Lee. (Pl. Br. at 8). Plaintiff's alleged onset of disability date for this case was October 27, 2011. (Tr. 19). A prior ALJ decision by the same ALJ, Deborah L. Rose, found Plaintiff not disabled through October 26, 2011. (Tr. 173). Plaintiff did not appeal that decision. (Tr. 19). Thus, as the ALJ noted in this decision, the issue of disability is *res judicata* through the date of October 26, 2011. Id. In the prior decision, the ALJ did consider the opinion of Dr. Lee.

> On May 11, 2009, Gary Lee, M.D., performed a Workers' Compensation evaluation. It was noted the claimant had suffered multiple work-related traumas and injuries over the years, including a low back injury on August 8, 1990; low back injury on December 30, 1993; low back injury in December 1995; right arm and elbow injury on May 11, 2006; and low back injury on October 9, 2007 …
>
> Upon examination, there were surgical scars from L2-S1 with marked range of motion. There was loss of lumbar flexion of 10 degrees, sacral flexion at 15 degrees, sacral extension of 5 degrees, lumbar extension of 5 degrees, right and left lateral flexion 10 degrees, and straight leg raise in the seated position positive at 60 degrees on the left and 70 degrees on the right … Dr. Lee opined that based on the combined effect of the claimant's present and prior injuries, he is permanently totally disabled …
>
> Additional records from Dr. Lee dated July 15, 2011, show examination of the cervical and thoracic spines revealed normal range of motion. Examination of the lumbar spine revealed decreased range of motion, and straight leg raise in the seated position was positive at 60 degrees on the left and 70 degrees on the right. There were similar findings in the supine position … Sensory exam on the upper

> extremities was normal. The[] lower extremities had diminished sensation in the feet and reflexes were diminished. Dr. Lee added that the claimant has had chronic low back pain and needs pain management with prescription medications. He has had hypertension that is in good control, and has bursitis or rotator cuff tear on the left shoulder. The doctor concluded, "[h]e remains permanently totally disabled."
>
> Dr. Lee also completed a Medical Source Statement. He found the claimant is able to … lift and / or carry less than 10 pounds occasionally and frequent[ly] due to severe back pain, limiting core strength and stability, stand and / or walk less than 2 hours in an 8-hour workday, sit less than 6 hours in an 8-hour workday and must periodically alternate sitting and standing to relieve pain or discomfort, and limiting pushing and / or pulling in upper and lower extremities. Dr. Lee added the claimant lies down more than 4 to 5 hours in an 8-hour period to avoid pain. He can never climb, balance, kneel, crouch, crawl, or stoop and is limited by severe back pain. He also noted that pain and medications alter ability to concentrate and pain leads to depression.

(Tr. 167-69). Therefore, in the prior decision, the ALJ considered Dr. Lee's opinion (the same opinion Plaintiff puts at issue) and still found Plaintiff not disabled. In the present decision, the ALJ noted Plaintiff's longitudinal history, including back surgeries. (Tr. 25). The ALJ evaluated the treating evidence and state agency physician opinions since the alleged onset date of October 27, 2011. Id. at 25-26. In addition, the ALJ noted Drs. Bailey and Green's opinions Plaintiff was only able to sit for 10 minutes at a time and has to change positions frequently due to pain. Id. at 26. Due to no changes in Plaintiff's condition since 2007 and Plaintiff's reported ability to relieve the back pain with over the counter medication, the ALJ assessed the physicians' opinions little weight. Id. Essentially, the ALJ considered opinions similar to Dr. Lee, which makes Dr. Lee's opinion cumulative. Moreover, Dr. Lee's opinion predated the onset of disability date. Thus, Dr. Lee's opinion would be of little probative value. In addition, the ALJ considered Dr. Lee's opinion in the prior decision, when Dr. Lee's opinion fell within the disability evaluation date. Therefore, the ALJ's failure to consider Dr. Lee's opinion within this order would be deemed harmless.

### 2. Corey Bailey, D.O., and Amanda Green, D.O.

Plaintiff states the ALJ erred by failing to give sufficient reasons for discounting the medical opinions of Drs. Bailey and Green. (Pl. Br. at 9). As the ALJ discussed, Plaintiff denied any new injuries or changes in his back pain when Dr. Bailey examined him in June 2014. (Tr. 26; see Tr. 371). In addition, as the ALJ noted, when another resident physician, Thomas Howard, D.O., examined Plaintiff in May 2013, he reported his pain was stable and relieved by over-the-counter medication. (Tr. 367). See 20 C.F.R. § 404.1527(c)(3)-(4) (ALJ must consider supportability of medical opinion and opinion's consistency with record as a whole when evaluating weight to be accorded). See also White v. Barnhart, 287 F.3d 903, 909- 10 (10th Cir. 2002) (claimant's admission that medication relieved some of her pain supported finding impairments were not disabling). Thus, the ALJ gave "good reasons" for the weight she assessed to the opinion of Drs. Bailey and Green. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

### 3. Plaintiff's Symptoms of Pain

Plaintiff states the ALJ failed to mention Plaintiff's pain ratings. (Pl. Br. at 9). In June 2014, Plaintiff rated the pain as nine out of ten (9/10) to Drs. Baily and Green. (Pl. Br. at 9) (citing Tr. 373). Plaintiff had a few pain ratings of 5/10 and 7/10 in May through July 2010, but he reported the pain as between 8/10 and 10/10 through July 2011, when Dr. Lee limited Plaintiff to less than sedentary work. (Pl. Br. at 9) (citing Tr. 340, 346, 368, 376, 382, 385, 390, 406-407, 410, 429-430, 454, 456, 458-459).

Although the ALJ did not mention the pain ratings in the decision, the ALJ did consider Plaintiff's testimony and other records of his reported pain. The ALJ noted Plaintiff testified at the hearing he is unable to work due to pain. (Tr. 25). On May 9, 2013, Plaintiff reported continued pain in his back (at the same intensity) since 2007. Id. However, Plaintiff said he was not taking

7

any pain medication with no plans to do anything further for his back. Id. On May 29, 2013, Plaintiff's family physician reported his back pain "stable" and noted his "symptoms are relieved by over the counter medication." Id. at 26. In September 2013, Plaintiff reported back pain radiating to his legs and was prescribed Tramadol. Id. However, in October 2013, the physician ceased the prescription due to Plaintiff taking more than instructed. Id. In June 2014, Plaintiff denied any changes in his back pain. Id. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Thus, the ALJ acknowledged Plaintiff's varying reports of pain in the record.

### 4. Plaintiff's Other Medical Records

Plaintiff states the ALJ did not discuss the unsuccessful attempt at physical therapy in May 2010. (Pl. Br. at 10). Plaintiff underwent five physical therapy sessions at Physical Rehabilitation Center of Tulsa in May 2010. (Tr. 406-411). Plaintiff was found to have abnormal posture, spinal tenderness, and severely limited trunk mobility. Id. Plaintiff had limited tolerance to the treatment and was discharged for that reason. Id. Although the ALJ did not mention this physical therapy session, the Court notes it predated the disability onset date of October 27, 2011. Moreover, it was not significantly probative as to constitute error. Clifton, 79 F.3d at 1009-10.

Plaintiff states the ALJ did not discuss Plaintiff being prescribed Tramadol on multiple occasions during the relevant period (including in May 2013 and June 2014 even after overusing the same eight months earlier). (Pl. Br. at 10) (citing Tr. at 26, 21-27, 341, 369, 372, 374, 380, 387, 391, 406-411, 487, 509). The Court notes the ALJ did discuss Plaintiff using Tramadol from September 2013 until October 2013, when the physician ceased the prescription due to Plaintiff taking more than instructed. (Tr. 26). Thus, further discussion would be cumulative. Moreover,

8

Plaintiff cites one instance in May 2013, but during the same time frame, he told the state agency physician he was not taking any pain medication. Id.

Plaintiff states the ALJ failed to mention numerous objective findings from before and during the relevant period including marked or severe loss of lumbar mobility in multiple planes with painful movement, positive straight leg raise testing bilaterally, reduced extremity reflexes and pulses, lower extremity altered sensation and weakness, decreased knee mobility with patellar crepitus, left quadriceps muscle atrophy, lumbar and thoracic muscle tenderness, paraspinal muscle abnormalities (including hypertonicity, spasm, and tightness) with tissue texture changes, and abnormal lumbosacral spinal and pelvic positioning. (Pl. Br. at 10) (citing Tr. 361 (Dr. First) (May 2013), 373-374, 378, 386, 390, (OSU Physicians) (September 2013 - June 2014), 403-404 (Dr. Lee) (May 2009), 410 (Physical Therapy) (May 2010), 413-414, 416-417, 419- 420, 422-423, 427-428 (Dr. Lee) (April – July 2011), 461 (Dr. Michael Opong-Kusi) (December 2009), 468 (Michael Reyes, PA-C) (September 2009)).

Although the ALJ did not mention these specific notes, the ALJ reviewed the medical record and discussed the most recent findings. (Tr. 25-26). The ALJ reviewed Dr. First's opinion (Tr. 25) and OSU records (see Tr. 26) (reviewing family physician notes and prescription for Tramadol). Moreover, Drs. Bailey and Green were OSU physicians. (Tr. 371-74). The remaining medical notes cited by Plaintiff predated the onset of disability date. Thus, the ALJ reviewed the most relevant medical evidence with the decision.

### 5. Vocational Expert Hypothetical

Plaintiff argues the vocational expert ("VE") did not address the impact of Drs. Bailey and Green's opinions on the availability of the jobs at issue. (Pl. Br. at 11). The doctors opined Plaintiff "is only able to sit for 10 minutes at a time and has to change his position frequently due to pain."

9

(Tr. 371). The ALJ noted Plaintiff admitted to no change in his condition (since 2007) and gave little weight to the physicians' opinions regarding the inability to sit for 10 minutes at a time and frequent need to change position. (Tr. 26). Although the ALJ considered this opinion, she declined to adopt it within her findings.

Since the ALJ did not incorporate the limitation into the residual functional capacity ("RFC"), there would have been no reason to question the VE regarding the limitation. See Bias v. Astrue, 484 F. App'x 275, 276 (10th Cir. 2012) ("when it comes to posing a hypothetical to a vocational expert, if substantial evidence supports an ALJ's finding that a 'non-severe' impairment does not create any work-related limitations, the ALJ is not required to include that impairment in the hypothetical.") (unpublished).[2] Phillips v. Colvin, 2015 WL 1227837, at *4 (W.D. Okla. Mar. 17, 2015). The ALJ was not required to include limitations that he ultimately did not adopt. See Roberts v. Colvin, 2014 WL 949870, at *4 (D. Utah Mar. 11, 2014) ("Notably, however, Plaintiff does not challenge the ALJ's RFC assessment, which did not include any limitations for Plaintiff's vertigo. Because the ALJ did not include any such limitations in his RFC assessment, he was not required to include them in the hypothetical given to the VE.") (citing Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000)) (The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). See also Sullivan v. Colvin, 519 F. App'x 985, 989 (10th Cir. 2013) ("We have repeatedly held that while an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

evidence."), citing <u>Clifton</u>, 79 F.3d at 1009-1010. <u>Didway v. Colvin</u>, No. CIV-14-191-SPS, 2015 WL 5690614, at *5 (E.D. Okla. Sept. 28, 2015).

**B.      ALJ Discussion of the Evidence**

Plaintiff alleges the ALJ erred by failing to discuss uncontroverted and / or significantly probative evidence that conflicted with her findings. (Pl. Br. at 11). Plaintiff states the ALJ did not discuss any of Dr. Lee's repeated findings of marked loss of lumbar mobility in multiple planes, positive straight leg raise testing bilaterally, diminished lower extremity reflexes, bilateral reduced knee flexion with patellar crepitus, and palpable left quadriceps muscle atrophy from May 2009 through July 2011. (Pl. Br. at 11-12) (citing Tr. 403-404, 413-414, 416-417, 419-420, 422-423, 427-428). As discussed above, the ALJ considered opinions similar to Dr. Lee, which made Dr. Lee's opinion cumulative. Moreover, Dr. Lee's opinion predated the onset of disability date. Thus, the Dr. Lee's opinion would be of little probative value. In addition, the ALJ considered Dr. Lee's opinion in her prior decision, when Dr. Lee's opinion fell within the disability evaluation date. (Tr. 167-69).

Plaintiff states the ALJ did not discuss the September 2009 findings of lumbar muscle tenderness and mild hypertonicity with bilateral leg weakness; the December 2009 findings of lumbar and hip abnormalities with the former involving muscle spasms and painful movement; or the May 2010 findings of abnormal posture, acute thoracic and lumbar tenderness, and severely limited trunk mobility with an inability to adequately tolerate physical therapy due to pain. (Pl. Br. at 12) (citing Tr. 406-410 (Physical Therapy) (May 2010), 461 (Dr. Michael Opong-Kusi) (December 2009), 468 (Michael Reyes, PA-C) (September 2009)). As discussed above, the medical notes cited by Plaintiff predated the onset of disability date. Thus, the ALJ reviewed the most relevant medical evidence with the decision.

Plaintiff contends although acknowledging some amount of decreased range of motion in his back, the ALJ never addressed the significant degree of limited mobility in his lumbar spine, hips, and left shoulder nor the painful movement and tenderness in his lumbar spine and diminished pulses and reflexes in his extremities from Dr. First's May 2013 consultative examination. (Pl. Br. at 12 & n.13) (citing Tr. 355, 358-359, 361). As cited above, the ALJ reviewed Dr. First's opinion in the decision.

> On May 9, 2013, the claimant underwent a physical examination with Dr. Jerry D. First at the request of [the] State agency. By the date of his examination with Dr. First, the claimant had still not had his left shoulder evaluated. The claimant also complained of continued pain in his back (at the same intensity) since 2007. However, the claimant was notably "not currently taking any pain medications" with "no plans to do anything further, for his back." Despite some observed limitation in his range of motion (particularly at his back), the claimant was able to walk down the 70-foot hallway without any difficulty or need of assistance. His gait was "normal, safe, and stable," and there was "no cyanosis, clubbing, or edema … joint deformity, redness, or swelling" in any of his extremities.

(Tr. 25). Thus, the ALJ reviewed the opinion of Dr. First. Although the ALJ did not cite every finding in the decision, she made a sufficient summary of the opinion. Luttrell v. Astrue, 453 F. App'x 786, 792 (10th Cir. Dec. 23, 2011) ("As this court has made clear, the ALJ need not discuss every piece of evidence in the record; it is enough if the ALJ discusses the evidence supporting his decision, 'the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.'") (quoting Clifton, 79 F.3d at 1010). Indeed, an ALJ is "not required to cite to specific medical evidence in the record" where his decision "includes a thorough discussion of the medical evidence, including an accurate summary of the treatment notes ... sufficient to allow the reviewer to follow the explanation." Baker v. Colvin, No. CIV-13-1152-W, 2014 WL 7404081 at *5 (W.D. Okla. Dec. 30, 2014). Such is the case here. The ALJ's decision is sufficiently specific to explain the relevant, record medical evidence on which he relied in formulating the RFC, and Plaintiff fails to establish reversible error. Benavidez v. Colvin, No.

CIV-15-495-M, 2016 WL 3257064, at *6 (W.D. Okla. May 19, 2016), report and recommendation adopted, No. CIV-15-495-M, 2016 WL 3255034 (W.D. Okla. June 13, 2016).

Plaintiff further states the ALJ disregarded November 2013 findings noting Plaintiff's thoracic and lumbosacral area muscle tightness, spasm, and tension; lumbosacral tissue texture and alignment / positioning abnormalities and left superior innominate shear along with left hip myofascial and articular left lower extremity restrictions. (Pl. Br. at 12) (citing Tr. 378-379) (OSU Physicians). Plaintiff states the ALJ also did not mention Drs. Bailey's and Green's June 2014 findings of the "severe" nature of Plaintiff's reportedly unchanged back pain, thoracic muscle tenderness and spasm, lumbar tenderness with moderately reduced mobility, bilateral lower extremity weakness in all major muscle groups, and left shoulder tenderness with moderately painful active and passive movement. (Pl. Br. at 12) (citing Tr. 371, 373-74). As discussed above, the ALJ reviewed the OSU records (see Tr. 26) and the opinions of Drs. Bailey and Green, who were OSU physicians. (Tr. 371-74).

Therefore, the record provided substantial evidence to support the ALJ's decision. The Tenth Circuit has explained the standard for substantial evidence, and it is not the reviewing court's position to reweigh the evidence or substitute judgment.

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

SO ORDERED this 7th day of August, 2017.

**Gerald B. Cohn**
**United States Magistrate Judge**